J-S38025-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TAHIJ A. JOHNSON | |
| Appellant | No. 1334 MDA 2014 |

Appeal from the Judgment of Sentence entered May 9, 2014
In the Court of Common Pleas of Luzerne County
Criminal Division at No: CP-40-CR-0000899-2013

BEFORE:  WECHT, STABILE, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                **FILED SEPTEMBER 08, 2015**

Appellant, Tahij A. Johnson, appeals from the judgment of sentence entered for his conviction of aggravated assault and other crimes.  Appellant challenges the trial court's refusal to award a new trial based on the weight of the evidence.  We affirm.

On February 20, 2013, Misty Williamson was at her house, 24 Essex Lane, Wilkes-Barre, Luzerne County, with Appellant, Rassan Hoskins, and John Longfoot.[1]  Williamson and Appellant had dated one another for a brief period.  The four were drinking 90-proof vodka. Hoskins became angry at the way Appellant was speaking to Williamson, and Hoskins and Appellant began to argue.  The verbal altercation turned physical, and it moved from

_____

[1] Unless otherwise noted, these facts are taken from the Trial Court Pa.R.A.P. 1925(a) Opinion, 11/26/14, at 1-4.

the kitchen of Williamson's house to the backyard area. That area is a parking lot, which was empty that night. Large boulders about one foot in height separate Williamson's parking spaces from her neighbors.

Williamson followed Hoskins and Appellant outside. She believed the fight was getting out of control, so she intervened. Williamson started yelling and tried to separate the two by pushing Hoskins off Appellant. In response, Appellant pushed her. Williamson fell, hitting the right side of her head on one of the boulders.

Williamson was bleeding below her right eyebrow, so she went to the second-floor bathroom of her house to clean herself. At that point, her jaw and nose were uninjured. Appellant entered the house and went upstairs. Hoskins and the other man had left. Williamson remembers being punched in the **left** side of her face by Appellant. After that point, Williamson could not remember what happened next.

Officers James Fisher and Steven Lada reported to Williamson's house. They saw two people fleeing, and they tried to enter the house, but two pit bulls were loose inside. Upon entering, the officers encountered Williamson in the kitchen. Her face was bleeding and badly swollen. Her injuries were so severe that Officer Fisher testified, "I've seen people in car accidents that didn't look that bad." N.T. Trial, 4/9/14, at 133. When asked if Appellant caused her injuries, Williamson nodded affirmatively. She indicated that Appellant was upstairs inside the house.

Officer Lada heard movement and saw Appellant climbing out of a second-floor window. The officer yelled at Appellant to stop, but he ignored them. The officers deployed their Tasers, Officer Fisher unsuccessfully and Officer Lada successfully, and they apprehended Appellant. Officer Fisher later filed charges against Appellant.

An ambulance transported Williamson to Geisinger Hospital. Williamson told medical personnel there that Earl Johnson, her ex-boyfriend from six or seven years ago, caused the injuries. She later admitted that she did not want Appellant to get in trouble.

Williamson's injuries were serious, and are permanent. Her jaw was broken in three places, her nose was broken, her eye socket was broken, and she needed stiches on her right eyebrow. She underwent surgery and had three plates and three screws inserted into the left side of her face. Her jaw was wired shut for eight weeks. During that time, Williamson could not eat solid food, so she subsisted on Boost nutritional drinks, cream of wheat, and other soft food. She was unable to live by herself, so she stayed with her sister. Williamson is permanently unable to chew on one side of her mouth, has no feeling on the left side of her chin, and must drink liquids with a straw. Her nose is permanently disfigured.

Williamson testified that she was afraid of Appellant on February 20, 2013, and that she did not have contact with him after that night. Appellant nevertheless sent Williamson a letter:

I'm changing for myself and you right this moment. And I will not turn back because I don't ever want to make another mistake like this.

I'll stick up for you if they try to say you were harboring a fugitive. Call me as a witness and I'll tell them that I wasn't staying at the house. Please don't let them convince you into burying me under the jail. They just want a case.

I'm on bent knees and begging you to forgive me for this wrong I have done.

P.S., I know they're riding your heels for testimony at court. Don't let them tear us apart. We belong together. I belong to you and you belong to me.

P.S.S. I'm not mad at you. Just please don't show up at court.

Trial Court Opinion, 11/26/14, at 4 (quoting N.T. Trial, 4/9/14, at 100-03). Testifying in his own defense, Appellant admitted to writing the letter—which constituted a violation of a Protection from Abuse Act[2] order—because he "wanted to let [Williamson] know that [he] loved her," *id.* at 210. Appellant generally denied injuring Williamson.

The jury convicted Appellant of aggravated assault, simple assault, and resisting arrest.[3] The trial court sentenced Appellant to 7 to 14 years in prison, followed by 2 years of probation. It later denied his post-sentence motion, which included a request for a new trial based on the weight of the evidence. *See* Pa.R.Crim.P. 607(A). This appeal followed.

---

[2] 23 Pa.C.S.A. §§ 6101-22.

[3] 18 Pa.C.S.A. §§ 2702(a)(1), 2701(a)(1), and 5104, respectively. The parties agreed to sever a charge of flight to avoid apprehension, 18 Pa.C.S.A. § 5126. (Appellant was charged with burglary prior to the night of Williamson's assault.)

On appeal, Appellant asks us to review the following question:

Whether the verdict was against the weight of the evidence when the evidence demonstrates that the complaining witness was accidentally injured after intervening in a physical altercation between the appellant and another male individual?

Appellant's Brief at 4 (all-caps font removed).

The trial court determines whether the jury's verdict is against the weight of the evidence in the context of a post-trial motion for a new trial. **Commonwealth v. Clay**, 64 A.3d 1049, 1054-55 (Pa. 2013).

Appellate review of a weight claim **is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence**. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Id.** (quoting **Commonwealth v. Widmer**, 744 A.2d 745, 753 (Pa. 2000) (emphasis added in **Clay**)) (internal citations omitted). Thus, we review the trial court's denial of the defendant's motion for a new trial for an abuse of discretion. **Id.**

As charged in this case, a person is guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S.A. § 2701(a)(1). Appellant claims he never intended to injure Williamson, who

was accidentally hurt while intervening in the fight between Appellant and Hoskins. Appellant also claims Williamson could not remember how her injuries occurred, and had been drinking alcohol before being hurt. Appellant does not dispute the weight of the evidence showing that Williamson suffered serious bodily injury.

Regarding Appellant's intent, it is true that a person who **justifiably uses** self-defense is not criminally liable for recklessly injuring an innocent bystander. *See Commonwealth v. Fowlin*, 710 A.2d 1130, 1134 (Pa. 1998). There was no finding, however, that Appellant was justifiably defending himself when fighting with Hoskins. Moreover, to be guilty of aggravated assault, the Commonwealth did not need to prove intent to injure, since Williamson indisputably suffered serious bodily injury. The Commonwealth needed to prove only mere recklessness under circumstances manifesting extreme indifference to the value of human life. Appellant further errs in looking in isolation at the altercation that took place in Williamson's backyard, which resulted in an injury to the **right** side of her face. Appellant fails to acknowledge Williamson's broken nose, jaw, and eye socket, and injuries to the **left** side of her face.

In arguing that Williamson could not remember how her more serious injuries occurred, Appellant cherry-picks evidence from the record for favorable evidence while ignoring inculpatory evidence. He fails to address Williamson's testimony that she remembered being hit by Appellant on the left side of her face. Appellant ignores evidence tending to show that only

- 6 -

he and Williamson were present inside her house when she suffered those injuries. Appellant fails to address his attempt to flee by jumping out of a second-floor window, which shows consciousness of guilt. The jury also could consider Appellant's letter sent to Williamson as evidence of guilt. Moreover, in contending that the police officers never secured forensic evidence to bolster Williamson's testimony, Appellant neglects to acknowledge that corroboration was not required. In any event, Appellant does not argue that any forensic investigation would have been exculpatory. Indeed, the only exculpatory evidence Appellant presented at trial was his own self-serving testimony.

We have reviewed the record and the evidence presented at trial. As stated above, "[a] trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Diggs*, 949 A.2d 873, 879-80 (Pa. 2008). Appellant here has not convinced us that the trial court abused its discretion in denying a new trial based on weight of the evidence.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/8/2015

- 7 -